Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
Por entender que ni la Ley de Control de Productores, Refinadores y Distribuidores-Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 et seq. (Ley de Gasolina), ni la Ley de Monopolios y Restricción del Comercio, Ley Núm. 77 de 25 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 257 et seq. (Ley de Monopolios), impiden que un participante del mercado presente una acción en daños por violaciones a las prohibiciones de las referidas leyes, disentimos del curso seguido por una mayoría de este Tribunal. En esencia, no *937 podemos estar de acuerdo porque el resultado de la Opi-nión del Tribunal es contrario a los propósitos de los esta-tutos antimonopolísticos en controversia.
I
Los demandantes, Aguadilla Paint Center, Inc., CB Gasoline Service Group y Micada de Puerto Rico, Inc. son detallistas o vendedores al detal de gasolina importada, distribuida y vendida por Esso Standard Oil (Esso); es de-cir, detallistas de marca. En el 2004, los detallistas presen-taron una demanda contra Esso en la cual le imputaban incurrir en la práctica ilícita de vinculación operacional y discrimen de precios y descuentos, en contravención al Art. 4A de la Ley de Gasolina, 23 L.P.R.A. sec. 1104a, y el Art. 7 de la Ley de Monopolios, 10 L.P.R.A. sec. 263. Asimismo, solicitaron indemnización bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. En específico, los demandantes alegan que Esso controla la operación de las estaciones de gasolina en violación al Art. 4A, porque esta-blece el costo de la gasolina, la cantidad de gasolina que vende, la frecuencia con la que se compra la gasolina, la entrega de la misma, el método de pago, el precio sugerido de venta y la renta de las estaciones de servicio. De otro lado, la causa de acción por violación al Art. 7 de la Ley de Monopolios se fundamenta en que, presuntamente, Esso mantiene un discrimen de precios frente a compradores igualmente situados.
Por su parte, Esso solicitó la desestimación alegando, en esencia, que esas dos causas de acción solo las puede pre-sentar el Departamento de Justicia. Por lo tanto, los de-mandantes carecían de legitimación activa.
El Tribunal de Primera Instancia proveyó “no ha lugar” a la moción de desestimación y el foro apelativo intermedio mantuvo ese dictamen al no expedir el auto solicitado, por no estar en posición de intervenir en esa etapa procesal. *938 Inconforme, Esso acude ante nos. Por su parte, los deman-dantes, cuyos planteamientos quedaron excluidos de la Opinión del Tribunal, argumentan que son conscientes de que existen una serie de remedios en los estatutos antes mencionados que se le han encomendado al Departamento de Justicia. En específico, aducen que los injunctions pre-liminares y permanentes reconocidos en dichas leyes para paralizar actuaciones prohibidas son competencia exclu-siva del Secretario de Justicia y es este quien tiene legiti-mación activa para procurarlos. Sin embargo, los deman-dantes no buscan interferir con esos remedios. Su única súplica es que se les permita demostrar que Esso les causó daños al violar los preceptos de ambas leyes por incurrir en prácticas de vinculación operacional y discrimen de precios. Incluso, aunque lo solicitaron originalmente en su demanda, los demandantes sostienen ante nos que no re-claman el beneficio de triple daño, reconocido en los esta-tutos antimonopolísticos de Estados Unidos y Puerto Rico. De nuevo, solo quieren que se les permita demostrar cómo, al incurrir en las prácticas prohibidas por los referidos es-tatutos, se les causó daños que, en algunos casos, resulta-ron en la quiebra de negocios familiares.
II
A. Estatutos antimonopolísticos
La Ley de Gasolina tiene como propósito combatir el control de los abastos de productos energéticos y eliminar las ventajas competitivas existentes en el mercado de gasolina. Por ello, nuestra Asamblea Legislativa procuró la uniformidad competitiva e implantó prohibiciones a prác-ticas discriminatorias y de control de precios. Unos meses más tarde, se aprobó la Ley Núm. 73 de 23 de junio de 1978 (23 L.P.R.A. sec. 1131 et seq.) (Ley 73), con el propó-sito de declarar la industria de la gasolina —en todas sus facetas— como revestida de interés público.
*939 A su vez, la Ley 73, supra, implantó una serie de prohi-biciones sobre acuerdos de arrendamiento y subarrenda-miento, y otro tipo de vinculación entre mayoristas y detallistas. Además, estableció que los mayoristas están obligados a presentar ante la Oficina de Asuntos Monopo-lísticos (O.A.M.) del Departamento de Justicia una copia de todos sus contratos con los detallistas. Asimismo, la Ley 73 dispuso que reconocía la existencia de la Ley de Mono-polios y que nada de lo dispuesto en la primera contraven-dría la segunda. Esto es, que la Asamblea Legislativa era consciente de la Ley de Monopolios y de su operación.
A tono con lo anterior, el Art. 4A de la Ley de Gasolina, 23 L.P.R.A. sec. 1104a, dispone que
[n]ingún ... distribuidor-mayorista podrá, mediante conve-nio ... operar directamente una estación de servicio de venta al detal de gasolina de forma que impida su completa desvin-culación operacional. Ningún ... distribuidor-mayorista podrá, mediante convenio ... imponer, requerir, fijar o limitar direc-tamente el margen de ganancia y/o el precio de venta al detal de la gasolina ... en la estación de servicio de venta al detal.
Asimismo, el Art. 8 de la Ley de Gasolina, 23 L.P.R.A. see. 1108, dispone que “[c]ualquier violación a las secs. 1102, 1102a, 1104,1104a, 1105 y 1105a, de este título cons-tituirá una práctica o acto injusto o engañoso y estará su-jeto a las disposiciones de las sees. 257 et seq., del Título 10”. (Enfasis suplido.) Esto último sobre las sees. 257 y siguientes del Título 10 se refiere a la Ley de Monopolios.
De otra parte, la Oficina de Asuntos Monopolísticos del Departamento de Justicia tiene a su haber una serie de remedios y facultades para fiscalizar el cumplimiento con Ley de Monopolios. Cabe resaltar que todas las secciones de esa ley a las que la Opinión de este Tribunal hace refe-rencia, disponen que la O.A.M. “podrá” realizar determina-dos actos.
*940 Por su parte, el Art. 7 de la Ley de Monopolios dispone, en lo pertinente, que:
(a) Será ilegal el que cualquiera persona, directa o indirec-tamente, discrimine en precio entre distintos compradores de cosas objeto de comercio del mismo grado y calidad, cuando dichas cosas sean vendidas para uso, consumo o reventa en Puerto Rico, y cuando el efecto de tal discrimen pueda ser el de reducir sustancialmente la competencia o tender a crear un monopolio en cualquier línea de comercio en Puerto Rico o afectar, destruir o evitar la competencia con cualquier persona que hubiese concedido o a sabiendas hubiese recibido el bene-ficio de tal discriminación, o con cualquier cliente de uno de éstos. 10 L.P.R.A. see. 263.
Por último, el Art. 12 de la Ley de Monopolios precep-túa:
(a) Cualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, salvo las de las Sees. 259 y 261 de este título, pueden demandar a causa de dichos actos ante el Tribunal de Primera Instancia y tendrá derecho a recobrar tres (3) veces el importe de los daños y perjuicios que haya sufrido, más las costas del procedimiento y una suma razonable para honora-rios de abogado. (Énfasis suplido.) 10 L.P.R.A. see. 268.
Como este último artículo excluye las acciones según 10 L.P.R.A. see. 259, hoy este Foro concluye que no será cual-quier persona la que pueda presentar esa acción, sino que será la O.A.M. la única legitimada de acuerdo con esa dis-posición de la Ley de Monopolios. Por ello, ordena la des-estimación de las causas de acción bajo la Ley de Gasolina y la Ley de Monopolios, aunque permite que el caso conti-núe en cuanto a las alegaciones de daños según el Art. 1802 del Código Civil, supra.
Como veremos más adelante, ese análisis es contrario a lo expresado en Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497 (1994). Allí, establecimos el origen y los propósitos abarcadores del Art. 2 de la Ley de Monopolios, *941 10 L.P.R.A. sec. 258. Este busca evitar cualquier acto, con-trato o conspiración para restringir irrazonablemente los negocios o el comercio en Puerto Rico. Para ello, nuestra Asamblea Legislativa adoptó el mismo texto de la Sec. 1 del Sherman Act, 15 U.S.C.A. sec. 1. Véanse: Pressure Vessels, supra; Northern Pac. R. Co. v. United States, 356 U.S. 1, 4 (1958).
Además, establecimos que tanto el texto de nuestro ar-tículo como la doctrina federal coinciden en que hay tres requisitos que se tienen que establecer para demostrar una infracción a esta disposición: (1) deberá existir algún con-trato, combinación o conspiración entre dos o más entida-des, (2) el cual restringe irrazonablemente los negocios o el comercio (3) en Puerto Rico. Pressure Vessels PR. v. Empire Gas P.R., supra, pág. 509. Por último, en el referido caso, resolvimos que un demandante puede traer prueba para demostrar la irrazonabilidad de unos contratos según su efecto sustancialmente adverso sobre la libre competencia, ello como vehículo para probar que, “como consecuencia de la infracción a la ley, el demandante haya sufrido un daño”, íd., pág. 520.
B. Concesión de poder de reglamentación
El 23 de junio de 1978, la Asamblea Legislativa aprobó dos leyes que nos atañen frente a la actual controversia. La primera es la Ley Núm. 72, que tuvo el propósito de añadir al Art. 3 de la Ley de Monopolios, supra, una disposición “a fin de autorizar a la Oficina de Asuntos Monopolísticos a radicar y tramitar querellas por violaciones a este artículo en el Departamento de Asuntos del Consumidor”, “autori-zar a dicho Departamento a resolver dichas querellas e imponer las sanciones aquí dispuestas” y “establecer el trá-mite procesal para la revisión judicial de dichas querellas”. Véase Ley Núm. 72 de 23 de junio de 1978 (1978 Leyes de Puerto Rico 256-257). Además, esa ley establece clara-mente que lo que se quiso fue “proveer un foro adicional a *942 los existentes donde puedan ventilarse los actos o métodos injustos en los negocios y el comercio”. (Enfasis suplido.) íd., pág. 257.
Por su parte, la segunda ley aprobada, la Ley Núm. 73, se estableció con el propósito de “autorizar a los Departa-mentos de Justicia, de Comercio y de Asuntos del Consu-midor, a la Junta de Planificación, la Administración de Reglamentos y Permisos, y a la Comisión de Servicio Pú-blico a adoptar e implantar la reglamentación necesaria para poner en efectos los propósitos y objetivos de esta ley”. 1978 Leyes de Puerto Rico 259. La Exposición de Motivos de esta ley dispone que es “necesaria la intervención gu-bernamental en su ejercicio del Poder de Razón de Estado para evitar dislocación en la integridad, funcionalidad y competencia que debe prevalecer en el mercado de la gaso-lina en Puerto Rico, industria vital a los mejores intereses de la ciudadanía y a la dinámica económica del país”. íd., pág. 260. Más adelante, esa misma ley prescribe en su Art. 5 que “[n]ada de lo aquí dispuesto o promulgado por regla-mento o de otra forma, conforme a las disposiciones de esta ley, será interpretado como que exceptúa de o confiere inmu-nidad en cuanto a la aplicabilidad de las disposiciones de la Ley Núm. 77 del 25 de jimio de 1964, según enmendada”, íd., pág. 264.
Así las cosas, la Asamblea Legislativa quiso añadir un remedio administrativo con el propósito de allegar herra-mientas a la lucha antimonopolística. No obstante, nada de lo aquí dispuesto sobre las facultades y el trámite adminis-trativo tuvo el propósito de eliminar los remedios reconoci-dos por la Ley de Monopolios, como bien dispuso el Art. 5 de la Ley Núm. 73, supra.
Esa acción legislativa es totalmente consecuente con la enmienda de 1970 a la Ley de Monopolios. Mediante la Ley Núm. 67 de 30 de mayo de 1970 se realizó una enmienda al Art. 3 de la Ley de Monopolios, supra, que dispone que “[s]in *943 zados en el artículo 13 [que versa sobre el remedio de injunction], la Oficina de Asuntos Monopolísticos, mediante reglas y reglamentos promulgados ... podrá proscribir actos o prácticas específicos ...”. (Escolios omitidos.) Ley Núm. 67 de 30 de mayo de 1970 (1970 Leyes de Puerto Rico 185).
Por ello, el Art. 3 de la Ley de Monopolios, supra, según enmendado, simplemente reconoce la facultad administra-tiva de reglamentar prácticas ilícitas y provee un foro ante el Departamento de Asuntos del Consumidor para exami-nar violaciones a los estatutos aquí discutidos.
III
Por los fundamentos que anteceden, disentimos del re-sultado de la opinión mayoritaria. Consideramos que nada en los estatutos que hemos discutido impide la legitima-ción activa de los demandantes y que, a pesar de que según el Art. 12 de la Ley de Monopolios, supra, se excluye el Art. 3, la acción de los demandantes en nada contraviene la delegación legislativa de poder para reglamentar, que se concede en ese Art. 3. En síntesis, se les debe permitir a los demandantes probar un caso de daños por violaciones a las disposiciones específicas de los estatutos aquí discutidos. Veamos.
La Ley de Gasolina fue adoptada con posterioridad a la aprobación de la Ley de Monopolios. Asimismo, la primera expresa que la Asamblea Legislativa fue consciente de las disposiciones de la segunda, al momento de aprobarla. La Ley de Gasolina expresa en su Art. 8 que cualquier viola-ción a varios de sus artículos, incluyendo el Art. 4A, “cons-tituirá una práctica o acto injusto [o] engañoso y estará sujeto a las disposiciones de las sees. 257 et seq. del Título 10”. 23 L.P.R.A. see. 1108.
Cuando acudimos a la see. 257 y siguientes del Título 10, es decir, a la Ley de Monopolios, encontramos que el Civil de Puerto Rico, supra, cabe preguntarnos: ¿qué ale- *944 Art. 12 reconoce una causa de acción a “[c]ualquier persona que sea perjudicada en sus negocios o propiedades por otra persona, por razón de actos, o intentos de actos, prohibidos o declarados ilegales por las disposiciones de este capítulo, salvo las de las sees. 259 y 261 10 L.P.R.A. sec. 268.
Cónsono con los propósitos legislativos de nuestros esta-tutos y de los estatutos federales en que se fundamenta la legislación local, esa causa de acción es totalmente indepen-diente del poder legislativo de reglamentar que se le confi-rió a las agencias administrativas mediante el Art. 3 de la Ley de Monopolios, supra.
Esto es importante porque, según la Opinión del Tribunal, las prácticas violatorias del Art. 8 de la Ley de Gaso-lina, supra, solo estarían sujetas a la acción de acuerdo con el citado Art. 3 de la Ley de Monopolios, que dispone que “[l]os métodos injustos de competencia, así como las prác-ticas o actos injustos o engañosos en los negocios o el co-mercio, por la presente se declaran ilegales”. 10 L.P.R.A. see. 259. Es decir, que porque el Art. 8 de la Ley de Gaso-lina declara “actos injustos y engañosos” lo prohibido en dicha ley y que, como el Art. 3 de la Ley de Monopolios es el que prohíbe los “actos injustos y engañosos”, y este, a su vez, está excluido del Art. 12 de la Ley de Monopolios que reconoce la acción de triple daño, entonces los demandan-tes no tienen disponible esa causa de acción por violaciones a la Ley de Gasolina.
Esa interpretación textualista —que propone el peticio-nario y que adopta completamente este Tribunal— es to-talmente contraria a los propósitos de ambas leyes. Ade-más, los artículos según los cuales reclaman los demandantes, no se deben interpretar como los únicos ar-tículos de esas leyes que permiten una acción en daños. Si bien esa interpretación que hace la Opinión de este Tribunal permite que los demandantes continúen con su causa de acción en daños de acuerdo con el Art. 1802 del Código *945 gaciones podrán presentar los demandantes para demos-trar que fueron las prácticas prohibidas del demandado las que le causaron los daños que buscan indemnizar, si se le han desestimado las causas de acción según la Ley de Mo-nopolios y la Ley de Gasolina?
Consideramos que se pudo llegar a una interpretación distinta. Máxime ante el hecho de que la propia Opinión del Tribunal reconoce el origen directo de nuestros estatu-tos antimonopolísticos de sus análogos federales.
En Estados Unidos, los “prívate antitrust actions” jue-gan un rol crítico en el régimen antimonopolístico. Antitrust Laws and Trade Regulation, Cap. 160, Sec. 160.01, pág. 160-2 (Mathew Reader). “In enacting the antitrust laws, the US Congress was convinced that ‘private antitrust litigation is one of the surest weapons for effective antitrust enforcement’ and that private suits are an important element of the Nation’s antitrust enforcement’ scheme .... The Supreme Court has labeled ‘the private action as a vital means of enforcing the antitrust policy of the United States’ and as an ‘important weapon of antitrust enforcement.’ ” (Énfasis suplido y escolios omitidos.) íd.
Por ello, nuestra interpretación es que la alegada acción ilícita de los demandados podría estar prohibida por la Ley de Monopolios y los demandantes así podrían demostrarlo conforme a nuestra opinión en Pressure Vessels PR. v. Empire Gas P.R., supra, que, en esencia, le permite a un par-ticipante del mercado reclamar daños por una actuación prohibida según el estatuto antimonopolístico.
De hecho, en la legislación federal, el remedio de triple daño está disponible en la See. 4 del Clayton Act. El texto de esa sección es sumamente sencillo y simplemente reco-noce una causa de acción a cualquier persona afectada por cualquier acto que prohíba una ley antimonopolística. 15 U.S.C.A. sec. 15. Para obtener ese remedio, el demandante solo tiene que probar que el daño fue causado por una ac-Civil de Puerto Rico, supra, cabe preguntarnos: ¿qué ale- *946 tuación antimonopolistica. Antitrust Laws and Trade Regulation Cap. 160, Sec. 161.02, pág. 161-9 (Mathew Render) (“Thus, in antitrust cases, it is not sufficient simply to demonstrate an injury, even injury directly caused ‘by the defendant. The injury will not be considered antitrust injury unless it was caused by reason of a violation of the antitrust laws’ ”). Esto demuestra que el Congreso quiso permitirles a los participantes del mercado presentar una acción de daños por el mero hecho de otro haber realizado una práctica antimonopolistica.
Por lo tanto, habríamos concluido que la demanda pre-sentada por los recurridos podía continuar. Con su deci-sión, este Tribunal deja en suspenso un importante ele-mento de la lucha antimonopolistica, en particular sobre el negocio de distribución de combustibles en Puerto Rico. Basta mirar a décadas pasadas para recordar las prácticas indeseables que sufrimos en el País durante la crisis petro-lera de los 70. Hoy, de espaldas a la política pública de Estados Unidos, a base de la cual formulamos nuestros estatutos relacionados con esta materia, este Tribunal ata las manos y cierra las puertas de la justicia a quienes ale-gan haber sufrido un daño que ahora será más difícil de demostrar.
De la normativa federal antes descrita es evidente que, desde principios del siglo pasado, el ordenamiento dispuso que los competidores jugarían un rol central en la lucha contra el control ilícito de los mercados, mediante la pre-sentación de acciones para recuperar el daño causado por acciones monopolísticas. No vemos por qué los participan-tes del mercado de gasolina puertorriqueño no puedan ha-cer lo mismo, cuando nuestra legislación también tiene el propósito de apoderar a los afectados con legitimación para reclamar remedios por prácticas injustas.
IV
A modo de epílogo, la decisión de este Tribunal se emite *947 en los momentos en que está en entredicho la capacidad de la Oficina de Asuntos Monopolísticos para adelantar los propósitos legislativos. De la propia información publicada por el Departamento de Justicia relacionada con su presu-puesto para el año fiscal en curso, surge que, desde el 2009, dicha Oficina ha perdido casi un cuarenta por ciento de su personal, apenas cuenta con cuatro abogados en la actua-lidad, y, durante el mismo periodo, se le ha recortado sobre un quince por ciento de su presupuesto. Véase Departa-mento de Justica, Presupuesto Aprobado para el año 2012, disponible en: http://www.pr.gov/presupuesto/aprobado— 2012/justicia.htm.
En suma, habríamos permitido que el litigio continuara en sus méritos en vez de resolverlo sumariamente, sin per-mitirle al demandante establecer su caso. La desestima-ción de acciones privadas contra el control ilícito de los mercados en nuestra jurisdicción es contraria tanto a la intención como al espíritu de la Ley de Monopolios y la Ley de Gasolina, y priva a los detallistas de gasolina de un instrumento muy importante para vindicar sus derechos ante prácticas injustas de los mayoristas.